638 So.2d 1182 (1994)
Quelyndreia JACKSON
v.
Daniel DENDY, et al.
No. 93 CW 0905.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
Elwood C. Stevens, Jr., Morgan City and Boris A. Navratil, Baton Rouge, for relator.
Wayne Royer, Baton Rouge, for respondent.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
The sole issue before us is whether the amendment of La.R.S. 13:3734(C) by La.Acts 1990, No. 46, section 1 is to be applied retroactively.
Defendant Daniel K. Dendy was the driver of a vehicle involved in a collision with a school bus. Dendy was allegedly intoxicated at the time of the accident and his intoxication *1183 was allegedly a cause of the accident. Dendy was brought to the emergency room of Baton Rouge General Medical Center (Medical Center) for treatment after the accident. Upon the request of his attending physician, Dendy allowed blood to be drawn for his blood alcohol level to be ascertained. Dendy was apparently subsequently charged with the crime of driving under the influence of alcohol and eventually pleaded guilty to that offense.[1] Plaintiffs, bus passengers and parents of passengers who were injured in the collision, instituted this personal injury action against Dendy, Dendy's insurer, the bus driver and the driver's insurer. They additionally seek exemplary damages pursuant to La.C.C. art. 2315.4.
Subpoenas were issued by plaintiffs seeking to discover Dendy's medical records from the Chemical Dependency Unit of Baton Rouge General Medical Center (CDU) pertaining to the presence of alcohol in:
"Dendy's System [sic] or on and about his body and clothing on October 14, 1989, as well as, any and all information which would tend to document Daniel K. Dendy's Customary [sic] habits and practices regarding the use, consumption or abuse of alcohol, drugs or other intoxicating agents and his actions of October 14, 1989 prior to the automobile accident giving rise to the instant litigation."
Plaintiffs also filed requests for production of documents to Baton Rouge General Medical Center seeking:
"Copies of any and all records and bills relating to any blood work, laboratory analysis, alcohol content within the body/organs of Daniel K. Dendy ... including but not limited to medical records, nurse's notes, surgical records, consultants' reports, pathology reports, and all admission, progress, or discharge notes on or after October 14, 1989 which in any way tend to reveal that Daniel K. Dendy had consumed any amount of alcohol or the presence of alcohol in his system, on his person or clothing or habits and practices regarding use thereof."
Dendy moved to quash the subpoenas duces tecum issued at plaintiffs' request to the Medical Center and CDU on the grounds that Dendy had not waived his health care providerpatient privilege. After a hearing on the matter, the trial court granted Dendy's motion to quash the subpoena issued to CDU. The motion to quash the subpoena issued to the Medical Center was denied, but only to the extent that the subpoena requests the production of blood alcohol tests, the results of such tests and any communications regarding such tests. The motion was granted and the subpoena quashed in all other respects.
Defendants sought supervisory writs on the issue of the blood alcohol test results and associated communications. We denied defendants application for supervisory writs. Jackson v. Dendy, 11/19/93, 93 CW 0898. The supreme court granted writs and remanded to this court for briefing and opinion. 633 So.2d 160.
In 1968 the legislature enacted La.R.S. 13:3734 which provided for the health care providerpatient privilege in civil cases much as we know it today. Pursuant to La.R.S. 13:3734 a patient in a civil proceeding has a privilege to refuse to disclose, and to prevent a health care provider from disclosing, any communication which was necessary to enable the health care provider to diagnose, treat, prescribe or act for the patient. Subsection C enumerates the exceptions to this privilege. It is uncontested that at the time of the accident and Dendy's treatment at the Medical Center emergency room the health care providerpatient privilege applied to results of the blood alcohol level test performed on Dendy and any communication regarding such test. Thus, the test results and communications were privileged at the time the test was performed and the communications made.
The accident occurred on October 14, 1989. This action was filed on March 13, 1990. On June 26, 1990, La.Acts 1990, No. 46, sec. 1 became effective. This Act amended La.R.S. 13:3734(C) by adding subsection (6) which provides:

*1184 "When an action for damages for injury, death, or loss has been brought against the patient, any health care provider who has attended the patient may disclose any communication regarding the blood alcohol level of the patient, when the blood alcohol level of the patient has sufficient probative value as to the cause of the person's injury, death, or loss."
Defendants contend the amendment to La. R.S. 13:3734(C) is substantive and should not be applied retroactively. The trial court found the amendment of La.R.S. 13:3734(C)(6) was procedural and applied it retroactively, negating a claim of privilege for the blood alcohol test and communications in connection therewith. The correctness of that ruling is now before the court.
La.R.S. 1:2, the governing rule of statutory construction, provides that no section of the Revised Statutes shall be applied retroactively unless expressly so stated. Our supreme court has declined to adopt a literal interpretation of this statute, stating its literal interpretation is inconsistent with civilian principles. See St. Paul Fire & Marine Insurance Co. v. Smith, 609 So.2d 809, 816 n. 12 (La. 1993).
Article 6 of the Louisiana Civil Code provides:
"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
La.R.S. 1:2 and La.C.C. art. 6 have been construed co-extensively so that the prohibition against retroactivity applies only to substantive laws. St. Paul Fire & Marine v. Smith, 609 So.2d at 816. Reading La.R.S. 1:2 and La.C.C. art. 6 together to determine whether a legislative enactment is to be applied retroactively or prospectively the court must "ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretive." Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992). Consequently, in order to determine whether Act 46 of 1990 should be applied retroactively, we must perform the two step analysis prescribed in Cole v. Celotex, 599 So.2d at 1063.
Section 2 of Act 46 provides that the Act becomes effective upon the governor's signature, or without the governor's signature, as provided in Article III, Section 18 of the state constitution. There is no language requiring only prospective application of the act. Nor is there a delayed effective date provision which might evidence some legislative intent of prospective application. Cole, 599 So.2d at 1064-1065 and St. Paul Fire & Marine Insurance Co. v. Smith, 609 So.2d at 817.
Pursuant to section 1 of Act 376 of 1992 Chapter 5 of the Code of Evidence entitled "Testimonial Privileges" was enacted. La. C.E. art. 510 is the corresponding article to the health care providerpatient privilege provided in La.R.S. 13:3734. La.R.S. 13:3734(B) was amended by section 4 of Act 376 of 1992 to provide: "In noncriminal proceedings, testimonial privileges, exceptions, and waiver with respect to communications between a health care provider and his patient are governed by the Louisiana Code of Evidence." However, Section 9 of Act 376 states that the effective date of the Act is January 1, 1993. It further provides that "communications made prior to January 1, 1993, which were subject to a valid claim of privilege under prior law, retain their privileged character unless waived." Thus, the fact that testimonial privileges are now contained in the Code of Evidence does not indicate a legislative intent that they should be considered procedural in view of the specific retention of the privilege under prior law. If anything there is indication of an intent to apply the removal of the exemption prospectively only. Consequently, we must proceed to determine whether the amendment is substantive.
"Substantive laws establish new rules, rights, and duties or change existing ones. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Interpretive laws merely *1185 establish the meaning the interpreted statute had from the time of its enactment."
Segura v. Frank, 630 So.2d 714, 723 (La. 1994). (Citations omitted).
Testimonial privileges, are generally considered to be procedural in nature and do not of themselves create causes of action or other substantive rights on the part of the holders of the privileges. However, where a person has the procedural right to make a valid claim, and that right is taken away or changed by a procedural law, a change in that right constitutes a substantive change in the law as applied to that person. For instance, prescriptive statutes are generally considered procedural except where right to file an action or claim is retroactively changed. See Chance v. American Honda Motor Co., Inc., 635 So.2d 177 (La.1994). Additionally, the jurisprudence has ascribed substantive weight to some evidentiary statutes including using them for establishing a basis to infer a cause of action. La.C.E. art. 501, comment (a). In Leger v. Spurlock, 589 So.2d 40, 41 (La.App. 1st Cir.1991), we recognized a cause of action of a patient against his treating physician for breach of confidentiality "guaranteed to the patient pursuant to LSA-R.S. 13:3734, 42 U.S.C. 290dd-3, 42 U.S.C. 290ee-3, and 42 C.F.R. Part II (Subpart E)." We held that an unauthorized disclosure gave rise to a cause of action for the intentional tort of invasion of privacy as well as for breach of contract which is encompassed under the medical malpractice act. In Leger v. Spurlock, the plaintiff, a police officer who was involuntarily committed to a chemical dependency unit, confided to his treating physician about the problems which were the basis for his commitment. Throughout this time the patient believed that everything he communicated to his physician was protected by physician-patient confidentiality. The physician's subsequent unauthorized disclosure to the district attorney and another attorney resulted in damage to the patient's reputation and marriage; the patient's being fired from his job as a police officer; and the filing of criminal charges against the patient.
Our supreme court protected the health care provider-patient privilege as well as the patient's constitutional right to privacy in Arsenaux v. Arsenaux 428 So.2d 427 (La. 1983). Therein, plaintiff sued her spouse for separation or divorce and claimed the privilege and constitutional right to privacy to exclude testimony about an alleged abortion obtained by the plaintiff spouse. Evidence of the abortion allegedly would have been evidence of fault (adultery) in the action. The supreme court strictly construed La.R.S. 13:3734 and determined that suits for separation and divorce were not among the civil suits which the legislature had delineated to constitute suits in which the privilege is waived. The plaintiff's physical condition was not considered a specific element of plaintiff's suit thus no waiver of that privilege by the plaintiff could be inferred. The court further held that a patient has a constitutional right to the privacy of his/her medical condition and that there was no compelling state interest which required an invasion of that right.
The retroactive revocation of a privilege which was valid when relied upon by a patient would harm the relationship between a patient and the health care provider as well as the privacy expectations of that patient. A patient would no longer have confidence that the information conveyed to a health care provider which is privileged and confidential at the time divulged, will be confidential and privileged in the future.
Plaintiffs contend that in enacting Act 46 of 1990 the legislature was fostering its policy of protecting society against drunk drivers. They allege that Act 46 was enacted in order to simplify the proof of intoxication of a defendant in order to facilitate the plaintiff's obtaining punitive damages pursuant to La. C.C. art. 2315.4. We recognize that Act 46 is an attempt by the legislature to protect society from drunk drivers. However, Act 46 was enacted five years after the enactment of La.C.C. art. 2315.4. The legislature could have amended La.R.S. 13:3734(C)(6) to aid victims of drunken drivers in obtaining punitive damages at the same time it enacted La.C.C. art. 2315.4. Then the retroactive removal of a privilege would not be at issue. Thus, we do not see the urgency (as alleged by plaintiffs) with which the legislature attempted *1186 to assist such victims by enacting Act 46.
Given prospective application, Act 46 will accomplish the legislature's goal of protecting society from drunk drivers. Retroactively revoking the privilege for a communication which was subject to a valid claim of privilege at the time the communication was made could have extremely deleterious results in the future. Fewer patients may feel free to obtain treatment for drug and alcohol abuse, sexually transmitted diseases, as well as other infectious diseases such as AIDS or HIV infection which plague society today, for fear of the repercussions of disclosure.
"When privileges exist, miscarriages of justice will occur. But the relationship that is protected, on the whole, outweighs some of the individually incorrect results.
Confidentiality is important in many health care relationships. The existence of so many privilege statutes should make that principle clear. The extraordinary federal regulations protecting patients treated for drug abuse are another example. By ensuring the patients' confidentiality, these regulations encourage victims of drug [and alcohol] abuse to seek medical assistance, helping them to turn from drugs and rejoin the rest of society."
Snyder, Disclosure of Medical Information Under Louisiana and Federal Law, 65 Tul. L.Rev. 169, 201 (1990). (footnote omitted).
We hold that removal of the patient-health care provider privilege is substantive in effect and cannot be retroactively applied to eliminate the privilege in effect at the time of disclosure. Accordingly, we reverse the judgment of the trial court and remand for further proceedings in accord with this opinion. Costs are assessed against respondents.
REVERSED AND REMANDED.
NOTES
[1] The conviction was apparently expunged pursuant to La.C.Cr.Pro. art. 894. The effect of the expungement is not before us in this writ application.