673 So.2d 624 (1996)
Thomas ADAMS and Nancy Adams, Individually and on Behalf of Jason Adams,
v.
CITY OF BATON ROUGE, Parish of East Baton Rouge, State of Louisiana, DOTD.
No. 95 CW 2515.
Court of Appeal of Louisiana, First Circuit.
April 30, 1996.
*626 Joseph J. McKernan, Baton Rouge, for Plaintiffs, Thomas and Nancy Adams, etc.
Sandrea L. Everett, Baton Rouge, for Plaintiffs, George R. and Ronda J. Ellis.
John W. Degravelles, Baton Rouge, for Plaintiffs, Randall K. and Lacy W. LeBlanc.
André C. Broussard, Baton Rouge, for Plaintiffs, Charles L. and Linda F. Buhler.
Henry Terhoeve, Baton Rouge, for Intervenor, State Farm Mutual Automobile Insurance.
Mark V. Marinoff, Baton Rouge, for Defendant/Relator, City of Baton Rouge, Parish of East Baton Rouge.
Edward M. Campbell, Baton Rouge, for Defendant, State of Louisiana, DOTD.
Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
CARTER, Judge.
The issue presented in the writ application in these four consolidated actions is whether the Parish of East Baton Rouge is entitled to a trial by jury pursuant to LSA-R.S. 13:5105, as amended by Acts 1995, No. 598.

*627 FACTS

The facts giving rise to these consolidated actions arise out of a vehicular collision. On or about May 10, 1993, Matthew Buhler was operating, and Jason Adams and Jason LeBlanc were guest passengers in, a 1984 Toyota truck, owned by Linda F. Buhler. Matthew Buhler was proceeding in a northeasterly direction on Louisiana Highway 3034, which is generally known as Sullivan Road, in East Baton Rouge Parish, Louisiana. Shortly after 2:30 p.m., Buhler attempted to negotiate a curve in the roadway and allegedly lost control of his vehicle. As a result, Buhler struck a guardrail located along the edge of the roadway and crossed into the path of the on-coming traffic, striking another vehicle. The other vehicle was a 1992 Ford pickup truck owned and operated by George R. Ellis. As a result of this accident, Jason Adams and George Ellis were seriously injured, and Matthew Buhler and Jason LeBlanc were killed.
On September 21, 1993, Thomas and Nancy Adams, individually and on behalf of their minor son, Jason, filed an action for damages in the 19th Judicial District Court, Division M, under docket number 398,693. Named as defendants in the Adams suit were the Parish of East Baton Rouge (Parish) and the State of Louisiana, through the Department of Transportation and Development (DOTD). The Adamses alleged that the shoulder and guardrail were owned and maintained by the Parish and/or DOTD, each of which was either negligent or strictly liable. The Parish answered the Adams petition, generally denying the allegations of the petition. In an amended answer, the Parish alleged that the accident and damages occurred as a result of victim fault or the negligence of a third person. DOTD answered the Adams petition, denying the allegations and alleging lack of notice, victim fault, and third-party fault.[2] Thereafter, DOTD filed a cross-claim against the Parish, alleging tort indemnity.
On April 12, 1994, Randall K. and Lacy W. LeBlanc filed an action for damages and for the wrongful death of their son, Jason, in the 19th Judicial District Court, Division I, under docket number 405,016. Named as defendants in the LeBlanc suit were the Parish and DOTD. The LeBlancs alleged that the shoulder and guardrail were owned and maintained by the Parish and/or DOTD, each of which was either negligent or strictly liable and both of which were solidarily liable with the other. DOTD answered the LeBlanc petition, denying the allegations and alleging lack of notice, victim fault, and third-party fault, and filed a cross-claim against the Parish, alleging indemnity.[3] The Parish answered the LeBlanc petition, generally denying the allegations of the petition.
On February 18, 1994, George R. and Ronda J. Ellis filed an action for damages in the 19th Judicial District Court, Division M, under docket number 403,380. Named as defendants in the Ellis suit were Charles Lee Buhler, the father and administrator of the estate of his minor son, Matthew Buhler, and State Farm Mutual Automobile Insurance Company (State Farm), the Buhlers' liability insurer.[4] In their petition, the Ellises alleged that the accident was caused by the negligence of Matthew Buhler. State Farm answered the Ellis petition, denying the allegations and alleging that Ellis was negligent and that third-parties, namely those entities responsible for maintaining the roadway, were at fault. On May 9, 1994, the Ellises amended their petition to add, as additional defendants, the Parish and DOTD, alleging the accident occurred as a result of the negligence and fault of the Parish and/or DOTD in designing, constructing, and maintaining the shoulder and guardrail on Sullivan Road. The Parish answered the amended petition, denying the allegations. DOTD also answered the amended petition, denying the allegations and alleging the negligence of Matthew Buhler and the Parish. DOTD also alleged that Sullivan Road, at the site of the *628 accident, was not part of the state highway system, but was part of the parish highway system.[5]
On May 3, 1994, Charles L. and Linda F. Buhler filed an action for damages and for the wrongful death of their son, Matthew, in the 19th Judicial District Court, Division H, under docket number 405,674. Named as defendants in the Buhler suit were the Parish and DOTD. The Buhlers alleged that the shoulder and guardrail were owned and maintained by the Parish and/or DOTD, each of which was either negligent or strictly liable. DOTD answered the Buhlers' petition, denying the allegations and alleging lack of notice, victim fault, and third-party fault.[6] The Parish answered the petition, generally denying the allegations of the petition and alleging that the accident and damages occurred as a result of victim fault or the negligence of a third person. Thereafter, DOTD filed a cross-claim against the Parish, alleging tort indemnity.
On April 21, 1994, the LeBlancs filed a motion to transfer and consolidate. By order, dated May 5, 1994, the LeBlanc action was transferred from Division I to Division M and was consolidated with the Adams action. On August 17, 1994, the Ellises filed a motion to consolidate. By order, dated August 22, 1994, the Ellis action was consolidated with the actions by the Adamses and the LeBlancs.[7]
State Farm, as liability and uninsured motorist (UM) insurer of the Adamses, filed a petition of intervention. In its petition, State Farm alleged that it paid to or on behalf of the Adamses payments of $50,000.00 under its UM provisions and $5,000.00 under its medical payments provisions. State Farm alleged that it was subrogated to its insureds' rights against the Parish and DOTD.
By Acts 1995, No. 598, the legislature amended LSA-R.S. 13:5105 to enact LSA-R.S. 13:5105 C relative to jury trial in suits against the City of Baton Rouge and the Parish of East Baton Rouge. Following its amendment in 1995, LSA-R.S. 13:5105 C provides as follows:
Notwithstanding the provisions of Subsection A, except upon demand for jury trial timely filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or the plaintiff in a lawsuit against the city of Baton Rouge or the parish of East Baton Rouge, no suit against the city of Baton Rouge or the parish of East Baton Rouge shall be tried by jury. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
On August 24, 1995, the Parish filed a request for a jury trial. In its request, the Parish alleged that the plaintiffs' causes of action exceeded $50,000.00, exclusive of interest, and that its request for a jury trial was filed within ten (10) days of the effective date of Act 598.
On August 30, 1995, the Adamses and the LeBlancs amended their petitions, alleging that, since the institution of their action, LSA-R.S. 9:2800 B was declared unconstitutional, dispensing with the requirement that they prove that the defendants had actual or constructive knowledge of the condition of Sullivan Road. The Buhlers amended their petition on September 14, 1995, making allegations identical to those made by the Adamses and the LeBlancs in their August 30, 1995, amended petitions. The Ellises amended their petition on November 7, 1995, making allegations identical to those made by the Adamses and the LeBlancs in their August 30, 1995, amended petitions and by the Buhlers in their September 14, 1995, amended petitions.[8]
*629 On September 11, 1995, the Parish again filed a request for a jury trial, alleging that the plaintiffs' causes of action exceeded $50,000.00 and that the request for jury trial was filed within ten (10) days of receipt of notice of plaintiffs' filing of an amended petition.
A motion to strike the Parish's request for a jury trial was filed by one of the plaintiffs, which the trial court considered as having been filed by all of the plaintiffs in the consolidated actions. In support of the motion to strike, the plaintiffs alleged that the Parish was not entitled to a trial by jury and that the Parish's request was not filed timely.
A hearing on the motion to strike the Parish's request for a jury trial was held on October 23, 1995. The trial judge subsequently issued written reasons for judgment, finding that "[a]t the time these cases were filed, there existed no right to a jury trial under LSA-R.S. 13:5105. By Acts [sic] 598 of the Louisiana Legislature of 1995, section 5105 was amended to provide for a jury trial `... upon demand ... by the City of Baton Rouge ...', LSA-R.S. 13:5105(c)." The trial court further determined that the "retroactive application of Act 598 would result in substantive impact on these litigants." The trial court concluded that LSA-R.S. 13:5105 could not be applied retroactively. Accordingly, the trial court rendered judgment, on October 30, 1995, granting the plaintiffs' motion to strike the demand for a jury trial filed by the Parish and striking the request for the jury trial. A written judgment was signed on November 16, 1995.
From this adverse judgment, the Parish filed an application for supervisory writs. By order, dated December 11, 1995, this court granted the Parish's application for writs, issued a writ of certiorari, and stayed all proceedings until further order of the court. The Parish assigned the following specifications of error:
1. The trial court erred in denying the Parish a right to jury trial in this matter.
2. The trial court erred in overruling a long line of jurisprudence which holds that a mode of trial (jury trial or bench trial) is a procedural matter and not a substantive matter.
3. The trial court erred in misinterpreting the court's decision in Cambridge Corner v. Menard, 525 So.2d 527 (La.1988), by reading that decision to mean that a statute providing a jury trial may not be applied to cases pending at the time the statute becomes effective.
4. The trial court erred in overruling a long line of jurisprudence which holds that a procedural statute may be applied to cases pending at the time that statute becomes effective unless the statute provides otherwise or disturbs substantive vested rights.

RIGHT TO JURY TRIAL
The Bill of Rights, which includes the seventh amendment right to jury trial, is directly applicable only to the federal government. The rights become applicable to the states when the United States Supreme Court, through a process of "selective" incorporation, determines that each is required by the fourteenth amendment's guarantee of due process. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d 901, 903 (La.1985). Thus, whether the right to a civil jury trial must be afforded by a state to its citizens, at least insofar as mandated by the United States Constitution, is dependent on whether the United States Supreme Court considers the civil jury trial an essential aspect of due process.
The United States Supreme Court, whose authority with respect to, and interpretation of, the United States Constitution is preeminent, has already decided that the right to jury trials in civil cases is not so fundamental to the American system of justice as to be required of state courts by the due process clause of the fourteenth amendment. Melancon v. McKeithen, 345 F.Supp. 1025, 1025 (E.D.La.1972), affirmed, 409 U.S. 943, 93 S.Ct. 289, 34 L.Ed.2d 214 (1972); Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d at 902. As a result, the seventh amendment is one of the few rights contained in the Bill of Rights which has not been made applicable to the states. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d at 903. See also Carter v. City of New Orleans, 327 So.2d 488, 490 (La.App. 4th *630 Cir.1976); Heindel v. Harley-Davidson Motorcycles, 467 So.2d 641, 645 (La.App. 4th Cir.), reversed, order striking jury reinstated, 477 So.2d 695 (La.1985).
The denial of trial by jury in civil cases began with the concept of sovereign immunity, which in Louisiana is of jurisprudential origin. As a general rule, the state was immune, unless it expressly waived its immunity. Consent to be sued was a matter of grace, not a vested right. Heindel v. Harley-Davidson Motorcycles, 467 So.2d at 642. However, since that time, sovereign immunity has been severely criticized, and courts in state after state have abrogated the doctrine. Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., 273 So.2d 19, 24-25 (La. 1973).
LSA-Const. art. 12, § 10 of the 1974 Constitution[9] clearly abrogated governmental immunity in Louisiana in contract and tort and provided, as follows:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
The adoption of LSA-Const. art. 12, § 10 represented an expansion of the right to sue the state and is in accord with prior judicial policy. Heindel v. Harley-Davidson Motorcycles, 467 So.2d at 644. See Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La. L.Rev. 647, 651 (1983).
In a Louisiana court, the right to a jury trial in a civil case is provided for by statute, namely LSA-C.C.P. arts. 1731 et seq. Usner v. Strobach, 591 So.2d 713, 721 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1289 (La.1992); Scott v. Clark, 583 So.2d 938, 941 (La.App. 1st Cir.1991); Rico v. Vangundy, 461 So.2d 458, 461 (La.App. 5th Cir.1984). LSA-C.C.P. art. 1731 A provides that "[e]xcept as limited by Article 1732, the right of trial by jury is recognized." LSA-C.C.P. art. 1732 places limitations upon civil jury trials and provides as follows:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs.
(2) A suit on an unconditional obligation to pay a specific sum of money, unless the defense thereto is forgery, fraud, error, want, or failure of consideration.
(3) A summary, executory, probate, partition, mandamus, habeas corpus, quo warranto, injunction, concursus, worker's *631 compensation, emancipation, tutorship, interdiction, curatorship, legitimacy, filiation, annulment of marriage, or divorce proceeding.
(4) A proceeding to determine custody, visitation, alimony, or child support.
(5) A proceeding to review an action by an administrative or municipal body.
(6) A suit on an admiralty or general maritime claim under federal law that is brought in state court under a federal "saving to suitors" clause, if the plaintiff has designated that suit as an admiralty or general maritime claim.
(7) All cases where a jury trial is specifically denied by law. (emphasis added.)
One instance which falls within the ambit of LSA-C.C.P. art. 1732(7), barring jury trial in "[a]ll cases where a jury trial is specifically denied by law," is LSA-R.S. 13:5105.
In 1975, the legislature enacted LSA-R.S. 13:5105, which provided for the denial of a jury trial in suits against the state. LSA-R.S. 13:5105 provided that "[n]o suit against the state or a state agency or political subdivision shall be tried by jury." See Abercrombie v. Gilfoil, 205 So.2d 461, 464 (La.App. 1st Cir.1967).
By Acts 1993, No. 993, LSA-R.S. 13:5105 was amended to provide as follows:
A. No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
B. Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or state agency, the party demanding the jury trial shall pay all costs of the jury trial including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive.
By Acts 1995, No. 598, § 1, the legislature again amended LSA-R.S. 13:5105 and added subsection C. LSA-R.S. 13:5105 C provides as follows:
Notwithstanding the provisions of Subsection A, except upon demand for jury trial timely filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or the plaintiff in a lawsuit against the city of Baton Rouge or the parish of East Baton Rouge, no suit against the city of Baton Rouge or the parish of East Baton Rouge shall be tried by jury. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
The issue presented in this writ application is whether the Parish of East Baton Rouge is entitled to a trial by jury pursuant to LSA-R.S. 13:5105, as amended by Acts 1995, No. 598, in an action which was commenced prior to the enactment of LSA-R.S. 13:5105 C. As a result, we must determine whether this legislative enactment applies retroactively.

RETROACTIVITY OF LSA-R.S. 13:5105 C
The general rule against retroactive application of legislative enactments and its exceptions is codified in LSA-C.C. art. 6; Rousselle v. Plaquemines Parish School Board, 93-1916 (La. 2/28/94); 633 So.2d 1235, 1244; Cole v. Celotex Corporation, 599 So.2d 1058, 1063 (La.1992); Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d 832, 835 (La.App. 1st Cir. 1993). LSA-C.C. art. 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Additionally, LSA-R.S. 1:2, the governing rule of statutory construction, provides that no section of the Revised Statutes shall be applied retroactively, unless expressly so stated. Jackson v. Dendy, 93-0905 (La.App. 1st Cir. 6/24/94); 638 So.2d 1182, 1184; Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. The Louisiana Supreme Court has declined to adopt a literal interpretation of LSA-R.S. 1:2, stating its literal interpretation is inconsistent with civilian principles. See St. Paul Fire & Marine Insurance Company *632 v. Smith, 609 So.2d 809, 816 n. 12 (La.1992).
Although LSA-R.S. 1:2 does not distinguish between substantive, procedural, and interpretive laws as does LSA-C.C. art. 6, it is generally construed as being co-extensive such that the prohibition against retroactivity applies only to substantive laws.[10]Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 816; Jackson v. Dendy, 638 So.2d at 1184. In other words, the rule of prospective application applies to laws that are substantive in nature, but laws that are procedural, remedial, or curative may be applied retroactively. Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835.
Reading LSA-R.S. 1:2 and LSA-C.C. art. 6 together to determine whether a legislative enactment is to be applied retroactively or prospectively, the court must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so and there are no other constitutional implications, our inquiry is at an end. However, if the legislature did not express an intention regarding retrospective or prospective application, we must classify the enactment as substantive, procedural, or interpretive. Cole v. Celotex Corporation, 599 So.2d at 1063; Jackson v. Dendy, 638 So.2d at 1184.
Consequently, in order to determine whether Acts 1995, No. 598 should be applied retroactively, we must perform the two-step approach prescribed in Cole v. Celotex Corporation, 599 So.2d at 1063.
First, it must be ascertained whether the enactment expressed legislative intent regarding retrospective or prospective application.
When the legislature amended LSA-R.S. 13:5105 by Acts 1993, No. 993, § 1, to authorize a jury trial against the state, a state agency, or a political subdivision of the state, the legislature specifically provided an effective date for the enactment and evinced its intention regarding the retrospective or prospective application of the amendment. Acts 1993, No. 993, § 2 provided as follows:
This Act shall become effective January 1, 1994, and shall not apply to any suit filed before that date.
However, in enacting LSA-R.S. 13:5105 C in 1995, the legislature did not provide for a specific effective date, nor did the legislature address its intent regarding the retrospective or prospective application of the amendment. Acts 1995, No. 598 contained only one section, namely § 1, which set forth the enactment of subsection C to LSA-R.S. 13:5105. Act 598 did not contain any other section, nor did it otherwise provide a specific effective date for the Act. As a result, pursuant to LSA-Const. art. 3, § 19,[11] the general effective *633 date of all laws enacted at the 1995 Regular Session was August 15, 1995.
Because the legislature, in enacting LSA-R.S. 13:5105 C, did not express any intention as to whether the new provision was to be limited to prospective application only or whether the courts were to afford retrospective application to that provision, our inquiry does not end here. We must then determine whether LSA-R.S. 13:5105 is substantive, procedural, or interpretive. See Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; Cole v. Celotex Corporation, 599 So.2d at 1063; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 816; State, Department of Transportation and Development v. Hellenic, Inc., 93-0870, 93-0871 (La.App. 1st Cir. 4/8/94); 636 So.2d 1004, 1008, writ denied, 94-1637 (La. 10/7/94); 644 So.2d 635.
A substantive law has been defined as that which creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. Stated another way, substantive laws either establish new rules, rights, and duties or change existing ones. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 94-0128 (La.App. 1st Cir. 11/10/94); 645 So.2d 1240, 1242, writ denied, 94-3028 (La. 2/17/95); 650 So.2d 252.
Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or operation of laws. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. In other words, procedural acts describe methods for enforcing, administering, or determining rights, liabilities, or status. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Curative acts are those that remove past disabilities in order to effect the true intent of the legislature. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. It is the original statute, not the interpretive one, which established the rights and duties. St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may then be given retrospective effect because it does not change pre-existing law, it merely clarifies it. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Interpretive laws change existing standards by redefining and returning to their original meaning, providing the legislature with the opportunity to pronounce the correct interpretation to be given to existing laws. Legislation, however, which changes settled existing law falls outside the category of interpretive legislation. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009.
In the instant case, there is no contention that LSA-R.S. 13:5105 C is interpretive legislation, and, clearly, it is not. Therefore, we must determine whether LSA-R.S. 13:5105 C is substantive or procedural.
The validity of LSA-R.S. 13:5105 has been upheld previously as a proper exercise of legislative authority to provide a "procedure" for suits against the state and its political subdivisions under LSA-Const. art. 12, § 10. See Jones v. City of Kenner, 338 So.2d 606, 608 (La.1976); Carter v. City of New Orleans, 327 So.2d at 491.
*634 In Carter v. City of New Orleans, 327 So.2d at 490-91, the court addressed whether trial by jury is a procedural matter within the meaning of the first sentence of LSA-Const. art. 12, § 10 C. The court held that trial by jury or by judge is a means or mode of proceeding by which a legal right is enforced; it is the machinery, as distinguished from its product, viz. the judgment. Louisiana jurisprudence is to the effect that the provisions of LSA-R.S. 13:5105, prohibiting jury trial in suits against the state or other public bodies, is a procedural matter. Moreover, in Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d 656, 658 (La.App. 1st Cir.), writ not considered, 248 La. 122, 176 So.2d 452 (1965), the court noted "[t]hat a right to trial by jury is procedural in this instance cannot be seriously disputed."
In support of their position that the 1995 amendment to LSA-R.S. 13:5105 is substantive and should be applied prospectively only, plaintiffs rely on Cambridge Corner Corporation v. Menard, 525 So.2d 527 (La.1988), and Ford v. McDermott Incorporated, 543 So.2d 1135 (La.App. 1st Cir.1989).
In Cambridge Corner Corporation v. Menard, 525 So.2d at 527, the Louisiana Supreme Court was presented with the issue of whether the 1987 amendment to LSA-C.C.P. art. 1732(1) was retroactive.[12] The court held that the amendment to LSA-C.C.P. art. 1732(1), raising the amount in dispute to $20,000.00, was substantive in nature and, therefore, applied only to suits filed on or after September 1, 1987, the effective date of the amendment. Because the suit in Cambridge Corner was filed prior to the effective date of the 1987 amendment to LSA-C.C.P. art. 1732(1), the $10,000.00 amount in dispute applied.
In Ford v. McDermott Incorporated, 543 So.2d at 1135, this court was presented with the issue of whether the 1988 amendment to LSA-C.C.P. art. 1732(6) was retroactive.[13] The court held that the amendment to LSA-C.C.P. art. 1732(6), prohibiting jury trials in admiralty cases, was substantive in nature and, therefore, applied only to suits filed after the effective date of the amendment. See also Gauchet v. Chevron U.S.A. Inc., 541 So.2d 272, 273 (La.App. 4th Cir.1989).
However, both of these cases are clearly distinguishable from the circumstances presented herein. First, in both of these cases, the courts addressed the retroactivity of an amendment to LSA-C.C.P. art. 1732, which has been held to involve a substantive right, and not LSA-R.S. 13:5105, which the courts have previously determined to be procedural. Second, in both of these cases, the amendments to LSA-C.C.P. art. 1732 operated to retroactively divest an individual, who had a right to a jury trial prior to the effective date of the amendments, of his right to a jury trial.
From the jurisprudence concerning LSA-C.C.P. art. 1731 et seq. and LSA-R.S. 13:5105, we glean that the issue to be resolved herein is difficult and complex because the right to a jury trial has both procedural and substantive aspects. As noted earlier, laws which provide for the method by which one's substantive rights may be enforced, namely a trial by judge or trial by jury, are procedural in that they address the method of enforcing a substantive right. In this regard, LSA-R.S. 13:5105 is clearly a procedural law. On the other hand, although there is no unconditional, constitutional right to a jury trial in a civil case, when state law confers that right on one of its citizens, the legislature cannot thereafter revoke that right and affect pending matters. In such instances, the procedural law has substantive effect with constitutional implications. However, when the legislature enacts legislation which grants the right to a jury trial to an individual, who previously had no right to a jury trial, that legislation does not divest or otherwise affect any substantive right of the *635 other party. There is, nor has there ever been, a vested right not to have a jury trial in a civil case, unless the jury trial is expressly not available under existing law.
Therefore, we hold that LSA-R.S. 13:5105 C establishes the procedure in a suit against the state, a state agency, or a political subdivision of the state, namely whether that action may be tried before a judge or a jury. Because the statute addresses the mode or means of the trial, it is a procedural matter, which does not affect any vested rights, and, therefore, may be applied retroactively. See Jones v. City of Kenner, 338 So.2d at 608; Carter v. City of New Orleans, 327 So.2d at 491; Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d at 658. Accordingly, the Parish is entitled to a trial by jury in this matter, and the trial court erred in granting the plaintiffs' motion to strike.

TIMELINESS OF REQUEST FOR JURY TRIAL
Having determined that the Parish is entitled to a jury trial pursuant to LSA-R.S. 13:5105 C, as amended by Acts 1995, No. 598, we must determine whether the Parish's request was filed timely.
In opposition to the Parish's writ application, the plaintiffs argue that, even if LSA-R.S. 13:5105 is applied retroactively, the Parish is not entitled to a trial by jury because it failed to timely file such request.
The courts have recognized the absolute and inviolate right of a party to a juridical cause to a trial by jury, except as limited by law and provided the requisite procedural forms are fulfilled. Revel v. Telecheck Louisiana, 581 So.2d 405, 407 (La. App. 4th Cir.), writ denied, 588 So.2d 1116 (La.1991). While the right to a jury trial is fundamental, it must be requested timely. Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1st Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992); Boudreaux v. Total CATV, Inc., 536 So.2d 571, 572-73 (La. App. 1st Cir.1988). Thus, when a party makes a timely request and complies with the other procedural requisites, his right to a jury trial cannot be violated. Revel v. Telecheck Louisiana, 581 So.2d at 407.
LSA-C.C.P. art. 1733 C provides that "[t]he pleading demanding a trial by jury shall be filed not later than ten days after either the service of the last pleading directed to any issue triable by a jury, or the granting of a motion to withdraw a demand for a trial by jury." If a request for a jury trial is not made timely, the right is waived, and the trial judge is vested with much discretion to disallow the filing of amended pleadings, if he finds that they are being filed solely for the purpose of circumventing the time limitations of LSA-C.C.P. art. 1733. Sharkey v. Sterling Drug, Inc., 600 So.2d at 706; Scurria v. Madison Parish Police Jury, 566 So.2d 1077, 1080 (La.App. 2nd Cir.1990). See also LSA-C.C.P. art. 1151.
In the instant case, the Parish filed an initial request for a jury trial on August 24, 1995. In its request, the Parish alleged that the plaintiffs' causes of action exceeded $50,000.00, exclusive of interest, and that its request for a jury trial was filed within ten (10) days of the effective date of Act 598. Thereafter, the plaintiffs amended their petitions on August 30, 1995, September 14, 1995, and November 7, 1995, respectively, alleging that, since the institution of their action, LSA-R.S. 9:2800 B was declared unconstitutional, dispensing with the requirement that they prove that the defendants had actual or constructive knowledge of the condition of Sullivan Road. On September 11, 1995, the Parish again filed a request for a jury trial, alleging that the plaintiffs' causes of action exceeded $50,000.00 and that the request for jury trial was filed within ten (10) days of receipt of notice of plaintiffs' filing of an amended petition.
At the hearing on the motion to strike, the trial court determined that the Parish's request for a jury trial, which was filed within ten (10) days of the effective date of Acts 1995, No. 598, was timely. We agree. As set forth earlier, LSA-C.C.P. art. 1733 C, which sets forth the time delays within which a request for a jury trial must be filed, provides that "[t]he pleading demanding a trial by jury shall be filed not later than ten days after either the service of the last pleading *636 directed to any issue triable by a jury, or the granting of a motion to withdraw a demand for a trial by jury."
We acknowledge that the Parish's initial request for a jury trial was not filed within ten (10) days of the filing of the last pleading directed to any issue triable by a jury as contemplated by LSA-C.C.P. art. 1733. The record reveals that these delays had elapsed prior to the enactment of LSA-R.S. 13:5105 C. At the time such pleading was required to be filed pursuant to LSA-C.C.P. art. 1733, the Parish could not have legally requested a trial by jury because LSA-R.S. 13:5105 C had not yet been enacted. However, the Parish's initial request was filed within ten (10) days of the effective date of the 1995 amendment adding LSA-R.S. 13:5105 C. As such, we find the request timely within the contemplation of LSA-C.C.P. art. 1733. This determination is consistent with the jurisprudential principle that the right of a litigant to jury trial is fundamental in character, and the courts will indulge every presumption against a waiver, loss, or forfeiture thereof. Champagne v. American Southern Insurance Company, 295 So.2d 437, 439 (La.1974); Duplantis v. United States Fidelity & Guaranty Insurance Corporation, 342 So.2d 1142, 1143 (La. App. 1st Cir.1977).

CONCLUSION
For the above reasons, the writ of certiorari, prohibition, and mandamus previously issued by this court is made peremptory. The trial court judgment, striking the Parish's request for a jury trial, is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
WRIT MADE PEREMPTORY. JUDGMENT STRIKING REQUEST FOR JURY TRIAL REVERSED AND CASE REMANDED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Pursuant to a motion and order for voluntary dismissal, by order, dated November 29, 1995, all plaintiffs dismissed, with prejudice, their claims against DOTD.
[3] See Footnote 2.
[4] Pursuant to the Ellis motion for partial dismissal, by order, dated January 9, 1995, all of the Ellis claims against Buhler and State Farm were dismissed, with prejudice.
[5] See Footnote 2.
[6] See Footnote 2.
[7] The record is devoid of a motion and order transferring and consolidating the Buhler action with the other three consolidated actions pending in Division M; however, the caption of the subsequent pleadings in the record indicates that the parties and the trial court proceeded as though all four actions had been consolidated.
[8] Various other motions and pleadings were filed by the various parties, none of which are pertinent to the issues presented in this writ application.
[9] By Acts 1995, No. 1328, § 1, approved October 21, 1995, and effective November 23, 1995, LSA-Const. art. 12, § 10 rewrote subsection C to provide as follows:

Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
The 1995 amendment to the constitution allows the legislature to limit and/or restrict the right to sue the state, a state agency, or a political subdivision of the state.
[10] We note that, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual or disturb vested rights. Rousselle v. Plaquemines Parish School Board, 93-1916 (La. 2/28/94); 633 So.2d 1235, 1244; Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94); 630 So.2d 714, 721, cert. denied, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887. A right is vested when:

the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right.
Rico v. Vangundy, 461 So.2d at 462, citing Tennant v. Russell, 214 La. 1046, 39 So.2d 726, 728 (1949), and Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.), writ denied, 415 So.2d 944 (La.1982).
[11] LSA-Const. art. 3, § 19 provides as follows:

All laws enacted during a regular session of the legislature shall take effect on August fifteenth of the calendar year in which the regular session is held and all laws enacted during an extraordinary session of the legislature shall take effect on the sixtieth day after final adjournment of the extraordinary session in which they were enacted. All laws shall be published prior thereto in the official journal of the state as provided by law. However, any bill may specify an earlier or later effective date.
The Regular Session of 1995 (the Twenty-First Regular Session under the Constitution of 1974) convened on March 27, 1995, and adjourned sine die June 19, 1995.
[12] The 1987 amendment to LSA-C.C.P. art. 1732(1) increased the amount in dispute required to entitle one to a jury trial from $10,000.00 to $20,000.00.
[13] The 1988 amendment to LSA-C.C.P. art. 1732(6) prohibited jury trials in suits on an admiralty or general maritime claim under federal law in any suit brought in state court under a federal "savings to suitors" clause, if the plaintiff designated the suit as an admiralty or general maritime claim.