JjFITZSIMMONS, Judge,
dissenting with reasons.
I respectfully dissent from the decision reached by the majority. The summary judgment in favor of the City should be reversed on the basis of a viable constitutional challenge to La.R.S. 9:2798.1 and 33:4773.
Prior to 1995, La. Const, art. 12, § 10 read in pertinent part:
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure....
The 1995 amendment added the following language to subsection (C) of the constitution:
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the *271 effects of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims....
Acts 1995, No. 1328 § 1.
Prior to 1995, La. R.S. 9:2798.1(B) prohibited the imposition of liability on public entities as follows:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform thier [sic] policy-making or ^discretionary acts when such acts are within the course and scope of their lawful powers and duties.
Acts 1985, No. 453, § 1.
Pursuant to Acts 1995, No. 828, amendments to various state statutes limiting the liability of governmental entities were enacted. The only amendment to section(B) of La. R.S. 9:2798.1 was the correction of the spelling of the word, “their” and “policy-making” to “policy making.” In a subsequent portion of that 1995 legislative act, there was a provision that the act would “take effect and become operative if and when the proposed amendment of article 12, section 10 of the Constitution ... becomes effective.”
Additionally, La. R.S. 33:4773(D), which had been added by the legislature in 1987, addressed the scope of liability of an enforcement agency in the following language:
D. The performance of any enforcement procedure in connection with any building code shall be deemed to be a discretionary act and shall be subject to the provisions of R.S. 9:2798.1. In connection with the construction of any building, structure, or other improvement to immovable property, neither the performance of any enforcement procedure nor any provision of a building code shall constitute or be construed as a warranty or guarantee by an enforcement agency as to durability or fitness, or as a warranty or guarantee by an enforcement agency that said building, structure, or other improvement to immovable property or any material, equipment, or method or type of construction used therein is or will be free from defects, will perform in a particular manner, is fit for a particular purpose, or will last in any particular way.
Acts 1987, No. 648, § 1.
If the constitutional amendment authorizing the legislature “to limit or provide for the extent of liability of ... a political subdivision” had been retroactive, then the district court in the instant matter would have correctly applied the statute prohibiting liability of a political subdivision relative to its inspection and grant of building permits. Any ^constitutional challenge would be moot. The majority decision, however, fails to recognize the substantive nature of the constitutional amendment to La. Const, art. 12, § 10, which renders the enabling language vis a vis any potential limitation of governmental liability prospective only. It does not retroactively affect preexisting rights and duties relative to events that transpired before the constitutional amendment. A review of the characterization constitutional amendments and, in particular, the 1995 amendment to the La. Const, art. 12, § 10 is helpful.
Unlike the United States Constitution, the state constitution limits the legislature’s powers, rather than grants them; therefore, plenary power in the legislature is the rule. Chamberlain v. State, Through Department of Transportation and Development, 624 So.2d 874, 879 (La.1993). It is incumbent on the party asserting the unconstitutionality of a statutory provision to identify either an express, or implied, limitation by constitutional provision of the legislature’s powers. Id. In answer to the motion for summary judgment by the City, the Loftons specifically asserted that La. R.S. 9:2798.1 and La. R.S. 33:4773, when read collectively, contravene article 12, section 10 of the Louisiana constitution.
In the absence of legislative expression, it becomes necessary to scrutinize the legislative objective and to judicially interpret the law as either substantive, procedural or interpretive. Manuel v. Louisiana Sheriffs Risk Management Fund, 95-0406, p. 8 (La.11/27/95); 664 So.2d 81, 86. Substantive laws either establish new rules, rights, and *272 duties or they change existing ones. Adams v. City of Baton Rouge, 95-2515, p. 14 (La. App. 1st Cir. 4/30/96); 673 So.2d 624, 633. Procedural laws portray the process or mode for “enforcing, processing, administering, or determining rights, liabilities, |4or status.” State, Department of Transportation and Development v. Hellenic, Inc., 93-0870,- 93-0871 (La.App. 1st Cir. 4/8/94); 636 So.2d 1004, 1009. Interpretive laws simply portray the meaning the statute contained in existing laws. The original statute, not the interpretive one, creates the rights and duties. Adams v. City of Baton Rouge, 95-2515 at p. 15; 673 So.2d at 633; 1 M. Planiol, Treatise on the Civil Law, § 251 (La.St.L.Inst.Trans. 1959) Legislation which changes established law falls outside the classification of interpretive legislation. State, Department of Transportation and Development v. Hellenic, Inc., 93-0870, 93-0871; 636 So.2d at 1009, writ denied, 94-1637 (La.10/7/94); 644 So.2d 635.
In this instance, La. Const, art. 12 § 10(C) provides some direction. A portion of that section declares that “[t]he legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims.” (Underscoring supplied.) The enabling legislative expression inferentially omits the option of a retroactive application.
.Immunity is not novel to governmental entities; therefore, historical guidance is beneficial to our analysis. Prior to the adoption of La. Const, art. 12, § 10 of the 1974 Constitution, the state and its political subdivisions had been immune from lawsuits, unless they expressly waived their immunity. Governmental consent to be sued was, in essence, an indulgence, not a vested right; The abrogation of governmental immunity in tort and contract, pursuant to La. Const, art. 12, § 10, was jurisprudentially perceived as an expansion of the right to sue the state and its political subdivisions. See Adams v. City of Baton Rouge, 95-2515 at p. 9; 673 So.2d at 630. An erosion of that right to sue a governmental entity, pursuant to the 1995 Isconstitutional amendment, would logically involve a concomitant' reduction of that same right.
Laws altering the liability of governmental entities have traditionally been deemed substantive. In Landry v. State, 495 So.2d 1284, 1290 (La.1986), the supreme court held that a statute limiting the liability of the state and its political subdivisions for things which they own[1] changed the substantive law of Louisiana. It would apply prospectively only; therefore, it was not relevant for consideration. So too, in Socorro v. City of New Orleans, 579 So.2d 931, 944 (La.1991), _ the supreme court classified a statute limiting the recovery of general damages in personal injury awards against the state[2] as substantive. The highest court observed that it is “the very substance of the claim for damages, the amount thereof, is affected by the legislation.” Id.[3] Although these two ease law examples involve amendments to statutes, rather than the constitution, the underlying concept is the same.
In 1993, pre-dating the constitutional amendment under review, the supreme court addressed the provisions of La. Const. Art. 12, § 10, in Chamberlain v. State, 624 So.2d 874, 883. It was cogently articulated:
The waiver of sovereign immunity provision is worded as follows: “[njeither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.” ... Translated, Section 10(A) thus provides that the state shall not be immune • from liability for tort damages _ Liiniting recoverable tort damages thus flies directly in the face of the constitutional proscription that the state waive sovereign immunity from liability for “injury to person or property.” (Underscoring ours.)
*273 | (¡Recalling its prior holding in Socorro, the court in Chamberlain reiterated that the legislative statute under scrutiny establishing a ceiling on general damages was substantive. Chamberlain, 624 So.2d at 883. The court further noted that, notwithstanding the legislature’s express statutory disclaimer to the contrary, a ceiling on general damages could not be reasonably construed in any manner except as a “resurrection” of sovereign immunity. It was jurisprudentially pronounced that La. Const, art. 12, § 10 “implicitly inhibits the legislature’s power to restrict recoverable tort damages.” Chamberlain, 624 So.2d at 887.
Therefore, prior to the 1995 constitutional amendment to art. 12, § 10, the legislature was not empowered with the authority conferred by the amendatory language to “limit or provide for the extent of liability of ... a political subdivision in all cases....” See Acts 1995, No. 1328 § 1. The constitutional amendment enabling the legislature to limit the liability of a political subdivision endowed the legislature with the authority to alter “the very substance of the claim.” This significantly affects the respective rights of the parties in that it reduces a party’s right to an action against the state and political subdivisions. See St. Paul Fire & Marine Insurance Company, 609 So.2d 809, 820 (La.1992). The amendment to La. Const, art. 12, § 10 should be construed as a substantive amendment to be applied prospectively only.[4]
17An interpretation that the amendment is substantive comports with the legislative committee minutes that addressed the amendment. The regular session House Appropriations Committee and Civil Law and Procedure Committee minutes reflect that the purpose of the proposed bill to amend La. Const, art. 12, § 10 was to authorize the legislature to provide limits of liability as it relates to the state and its political subdivisions.[5] It was specifically noted at the Appropriations Committee meeting that the supreme court, in the Chamberlain case, had declared that the legislature could not impede the liability against the state or reinstate sovereign immunity. It was, moreover, recognized that the legislature did not have the power to enact any statutory legislation addressing this problem. The constitutional amendment under consideration was presented by the legislative proponents as changing the constitutional article to empower the legislature to enact limitations of liability, as well as to enact statutes dealing with immunity, procedures and limitations on a person’s right to sue the state and its political subdivisions. The constitutional amendment clearly exceeded a mere interpretation, clarification, or “cure” of existing law. It was an alteration of the former prohibition of article 12, § 10 against limiting liability.
The exclusively prospective application of the 1995 amendment to article 12, § 10 renders La. R.S. 9:2798.1 and 33:4773 subject to the constitutional challenge asserted in the third party demand by the Loftons.

. R.S. 9:2800 limited the application of La. C.C. art. 2317.

. La. R.S. 13:5106(B) limited recovery against the state or any of its agencies or political subdivisions to $500,000.00.

.In a subsequent decision, however, it is noteworthy that the supreme court deemed La. R.S. 13:5106(B)(1), establishing a statutory ceiling on general damages, to violate the constitutional prohibition against sovereignty.

. It is submitted that our colleagues in the second circuit erroneously characterized the nature and application of the constitutional amendment. See Ayers v. Brazell, 27-756, 27-757, (La.App. 2nd Cir. 12/6/95); 665 So.2d 694, writ denied, 96-0086 (La.3/29/96); 670 So.2d 1236. The Ayers case corresponds almost identically to the instant appeal. The second circuit addressed the issue of retroactivity of the amendment to article 12, § 10 of the Louisiana Constitution. Citing a previous second circuit case, the second circuit in Ayers held that the constitutional amendment was retroactive because it was curative and remedial.

. House Committee on appropriations, Minutes of Meeting, 1995 Regular Session, April 18, 1995; Minutes, Civil Law and Procedure Committee, April 24, 1995.