467 So.2d 641 (1985)
Glenn David HEINDEL
v.
HARLEY-DAVIDSON MOTORCYCLES, et al.
No. C-3228.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1985.
*642 Paul J. Mirabile, Lawrence J. Duplass, New Orleans, for relators.
Gregory J. Lannes, Jr., Chalmette, for respondent.
Before GARRISON, BARRY and LOBRANO, JJ.
BARRY, Judge.
Relators seek to declare unconstitutional La.R.S. 13:5105 which prohibits a jury trial against the state or a political subdivision. This suit involves a motorcycle-automobile collision on a state bridge. Plaintiff sued the motorcycle manufacturer and the Louisiana Department of Transportation. The state's motion to strike the jury under R.S. 13:5105 was granted.
Relators claim a lack of constitutional equal protection. In granting this writ we stayed further proceedings and allowed time for briefing.
The denial of trial by jury in civil cases began with the concept of sovereign immunity which is of jurisprudential origin in Louisiana. The state is immune unless it expressly waives its immunity. Consent to be sued is a matter of grace, not a vested right.
Sovereign immunity has been severely criticized and courts in state after state have abrogated the doctrine. Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprise Company, Inc., 273 So.2d 19 (La. 1973).
The right to a civil jury trial is in La.C. C.P. Art. 1731[1] except "[a]ll cases where a jury trial is specifically denied by law." La.C.C.P. Art. 1733. La.R.S. 13:5105 (prior to 1975 R.S. 13:5104) provides such a denial in suits against the state: "No suit against the State or other public body shall be tried by jury."[2] This provision (enacted in 1960) was adopted pursuant to the predecessor to *643 La. Const. Art. XII § 10 (1974), Art. III § 35[3] which provided in pertinent part:
The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions ... each authorization by the Legislature for suit against the State ... shall be construed... as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof....
Article III § 35 and its predecessors specify that the procedure shall be the same as in ordinary civil actions. St. Julian v. State, 82 So.2d 85 (La.App. 1st Cir.1955). The language would appear to have granted a plaintiff the right to a jury trial against the state or a state agency. Similar language in the constitution or the statutory scheme of other states has been so construed. See Intriligator v. City of Boston, 18 Mass.App. 703, 469 N.E.2d 1296 (1984) review granted 393 Mass. 1104, 474 N.E.2d 181 (1985); Enghauser Manufacturing Company v. Eriksson Engineering Ltd., 6 Ohio St.3d 31, 451 N.E.2d 228 (1983).
The First Circuit declared that a civil action against the state authorized by an act of the legislature could be tried before a jury since the act permits suits against the state just as suits against private litigants prior to the effective date of La.R.S. 13:5104 (since 1975 R.S. 13:5105). Act 27 of 1960 containing R.S. 13:5104 repealed by implication previous constitutional and statutory pronouncements that rules of procedure between private litigants would be used against the state. Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d 656 (La.App. 1st Cir. 1965), writ not considered, 248 La. 122, 176 So.2d 452 (La.1965).[4]
After enactment of La.R.S. 13:5104 no jury trial was allowed if the state was a defendant. See Abercrombie v. Gilfoil, 205 So.2d 461 (La.App. 1st Cir.1967). The right to sue the state without legislative authorization was judicially created in Board of Commissioners of the Port of New Orleans v. Splendour Shipping and Enterprise Company, Inc., supra. Then Art. XII § 10 of the 1974 Constitution clearly abrogated governmental immunity in Louisiana in contract and tort:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision *644 against which judgment is rendered.
This represents an expansion of the right to sue the state which is in accord with prior judicial policy. Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La.L. Rev. 647, 651 (1983).
In Jones v. City of Kenner, 338 So.2d 606 (La.1976), the Supreme Court considered whether La.R.S. 13:5105 was inconsistent with Art. XII § 10 and held:
Subsection (C) of that article specifically authorizes the legislature `to provide a procedure' for suits against public bodies. On the basis of the sole argument urged to us, we are unable to hold that the procedural authorization of non-jury trial offends Article 12, Section 10, of our 1974 constitution. 338 So.2d at 608.
There was no consideration of equal protection issues since that argument was not made to the court.
The Supreme Court did not consider that constitutional issue in Williams on behalf of Williams v. Kushner, 449 So.2d 455 (La.1984), where a trial court in a medical malpractice suit declared La.R.S. 13:5105 (among other statutes) unconstitutional. Finding that a medical malpractice action is not a suit against the Louisiana Patient's Compensation Fund, but against the health care provider, the court concluded that La. R.S. 13:5105 was not applicable.[5] The court expressly stated it did not reach the constitutionality of R.S. 13:5105.
Although the State relies upon Carter v. City of New Orleans, 327 So.2d 488 (La. App. 4th Cir.1976), the issue before the court was whether the prohibition of jury trials in contract and tort suits under La. R.S. 13:5105 was within the legislative authority to "provide a procedure for suits against the state, a state agency, or a political subdivision," La. Const. Art. XII § 10(C), even though the defendants no longer had sovereign immunity in contract and tort, La. Const. Art. XII § 10(A). This court concluded that trial by jury was a procedural matter within La. Const. Art. XII § 10(C) and thus La.R.S. 13:5105 was valid. Equal protection and due process arguments were not before the court;[6] however, in dicta the court stated that a right to a jury trial was not an essential element of due process.[7]
Judge Redmann's dissent in Carter correctly noted that the authorization by Const. Art. XII § 10(C) for suits against the state must mean a procedure consistent with the guarantees of equal protection and due process of La. Const. Art. I §§ 2, 3 and 22 (and if not with U.S. Const.Amend. XIV). The restrictions placed upon the right to sue the state by the legislature could not transcend or be inconsistent with other constitutional provisions. See Cobb v. Louisiana Board of Institutions, 237 La. 315, 111 So.2d 126 (1958).
The guarantees of our state and federal constitutions only protect against violations of individual rights by unreasonable statutory limitations. Under an equal protection analysis the first determination must be whether the statute disadvantages a "suspect class" or infringes upon a fundamental right which would trigger strict scrutiny. See Sibley v. Board of Supervisors of Louisiana State University and Agricultural & Mechanical College, 462 So.2d 149 (La.1985). The court must find a "compelling governmental interest." Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).
*645 Otherwise, historically the courts have treated economic and social welfare legislation with great deference. It is only necessary that the legislative act rationally furthers some legitimate, articulated state purpose. Bazley v. Tortorich, 397 So.2d 475 (La.1981). See generally Nowak, Rotunda & Young, Constitutional Law, 515 et seq. (1978). Somewhere between the two standards of review falls a middle tier approach used in cases involving gender and birth status. There the classification is permissible only if it is "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Company v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561-62, 64 L.Ed. 989, 990-91 (1920); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
The effect of the prohibition against jury trials in La.R.S. 13:5105 is to create two classes of defendants: governmental and others. Thus, plaintiffs fall into two classes: victims of governmental tortfeasors and of other tortfeasors. Victims of governmental tortfeasors are denied a jury trial.
Our jurisprudence establishes that the right to a jury trial is fundamental in character. Courts will indulge every presumption against waiver, loss or forfeiture thereof. Champagne v. American Southern Insurance Company, 295 So.2d 437 (La.1974); Abercrombie v. Gilfoil, supra. However, the Seventh Amendment to the U.S. Constitution guaranteeing the right to a jury in all suits at common law where the value exceeds a certain amount has not been applied to the states. Day v. Louisiana Central Lumber Company, 144 La. 820, 81 So. 328 (1919); Carter v. City of New Orleans, supra. It is settled that there is no absolute, unconditional constitutional right to trial by jury in a civil case. Abercrombie v. Gilfoil, supra.
Even though favored by law, the right to civil jury trial, a procedural matter, Carter v. City of New Orleans, supra; Pelloat v. Greater New Orleans Expressway Commission, supra, has also been found not to be a fundamental right triggering strict scrutiny.
In Detraz v. Fontana, 416 So.2d 1291 (La.1982), apparently using a mid-level approach, our Supreme Court declared unconstitutional on equal protection grounds La. R.S. 42:261 E which granted a public official (sued in his official capacity) the right to require a plaintiff to post bond for court costs and attorney's fees. The Court found no reasonable justification for the disparate treatment between governmental and private tortfeasors. The approach in Detraz was explained in Sibley v. Board of Supervisors of Louisiana State University and Agricultural & Mechanical College, supra, in terms of the result of the statute under scrutiny. It made "it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against public officials ... for the redress of grievances, suffered, in the case there under consideration, because of race." Sibley, supra at p. 155, n. 4.
Although the classification of a victim in this case is not suspect and might not justify a middle level approach, and there is no question of gender or birth status (which customarily trigger that level of scrutiny), there remains a right at issue which has been favored in the jurisprudence and judged fundamental in character.
Protection of the "deep pockets of the state" is often proffered as the aim of the statutory provision; however, that argument has outlived its viability. As pointed out in the dissent in Carter v. City of New Orleans, supra, wealthy defendants provide similar "deep pockets," but victims of such tortfeasors are not denied a jury.
The concern over runaway juries and the prevention of unfair verdicts have also been voiced as legislative goals. Relators correctly point out that there are trial procedures, post trial remedies and the appellate process to avoid error or correct wrongs. As an added precaution, a judgment against the state is not exigible except *646 from funds specially appropriated by the legislature. La. Const. Art. XII § 10(C).
Perhaps Holmes' famous quote does not apply: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV."[8] But we find the impact of R.S. 13:5105, though of recent vintage, constitutionally repugnant to the jury trial concept which has roots in the middle ages and is important to our contemporary legal process.
Under the mid-level approach we find R.S. 13:5105 does not have a rational basis or substantial relation to any legislative goals. Permitting different defendants to be judged separately (and differently) does not contribute to an equal and balanced judicial process. The disparate treatment of victims to be determined by whether the tortfeasor is a governmental entity or otherwise is contrary to our basic concepts of equal protection under the law.
We hold La.R.S. 13:5105 unconstitutional as violative of the equal protection guarantees of the Louisiana Constitution, Art. I §§ 3 and 22.[9]
The writ is made peremptory. The State's Motion to Strike the Jury Trial and the denial of the Motion to Declare R.S. 13:5105 unconstitutional is reversed.
NOTES
[1] This refers to articles prior to the amendments to La.C.C.P. Art. 1731-1735 in Acts 1983, No. 534 § 1.
[2] Thus, when the state is one of two or more defendants, a bifurcated trial results with the court determining the state's liability while a jury tries the non-governmental defendant. Jones v. City of Kenner, 338 So.2d 606 (La.1976); Deville v. Town of Bunkie, 364 So.2d 1378 (La. App. 3rd Cir.1978).
[3] The 1921 Constitution, Art. III § 35 provided:

"Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered thereon." This article was amended in Acts 1946, No. 385 and Acts 1960, No. 621.
[4] The special legislative acts passed in 1958 to allow the Pelloat suits, Acts 162, 237 and 445, stated that "the procedure for said suit ... shall be the same as between private litigants ..."
[5] In construing La.R.S. 13:5105 the Supreme Court has held that the statute prohibits a jury trial in a suit against the state even when the state agency requests it. Descant v. Rapides Parish Policy Jury, 409 So.2d 1226 (La.1982).
[6] The constitutional problem of R.S. 13:5105 has been avoided on grounds that litigants failed to bring up that matter to the trial court. See Lemire v. New Orleans Public Service Inc., 458 So.2d 1308 (La.1984); Bishop v. Shelter Insurance Company, 461 So.2d 1170 (La.App. 3rd Cir.1984); Zuber v. Lafourche Parish School Board, 325 So.2d 764 (La.App. 1st Cir.1976), writ denied 351 So.2d 153 (La.1977).
[7] But see Gianechini v. City of New Orleans, 410 So.2d 292 (La.App. 4th Cir.1982), writ denied 412 So.2d 1109 (La.1982), appeal dismissed 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982).
[8] Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 459 (1897).
[9] The due process argument is pretermitted.