674 So.2d 317 (1996)
William BLANCHARD, et al.
v.
CITY PARISH OF EAST BATON ROUGE, Louisiana, et al.
No. 95 CW 2011.
Court of Appeal of Louisiana, First Circuit.
April 30, 1996.
*318 C. John Caskey, Brent Burley, Mark Callender, Michael Cupit, Baton Rouge, for Plaintiffs, William Blanchard, et al.
Mark V. Marinoff, Baton Rouge, for Defendant, City of Baton Rouge/East Baton Rouge Parish.
Frank Tomeny, III, Bryan D. Fisher, Baton Rouge, for Defendant, State of Louisiana, DOTD.
Lloyd J. Lunceford, Baton Rouge, for Defendant, Louisiana Television Broadcasting Corp., d/b/a WBRZ-TV2.
Before CARTER and PITCHER, JJ., and HILLARY J. CRAIN[1], J., Pro Tem.
CARTER, Judge.
This issue presented in the writ application in this action for damages is whether the City of Baton Rouge and Parish of East Baton Rouge are entitled to a trial by jury pursuant to LSA-R.S. 13:5105, as amended by Acts 1995, No. 598.

BACKGROUND
In the spring of 1992, Operation Rescue National announced that an anti-abortion rally, called "Summer of Purpose," would be held in Baton Rouge, Louisiana, during the week of July 6 through 11, 1992. The organizers of the event anticipated attracting several thousand participants. Officers with the Baton Rouge Police Department, troopers with the Louisiana State Police, and prison guards with the Louisiana Department of Public Safety provided security for the event.
On the morning of July 11, 1992, as part of the "Summer of Purpose" rally, several hundred protesters congregated near a Baton Rouge women's clinic to block the entrance to the facility. Approximately 205 individuals were restrained by law enforcement authorities for several hours. Thereafter, they were released.

FACTS
On August 10, 1992, 112 of the 205 individuals restrained by law enforcement authorities on July 11, 1992, filed the instant suit for compensatory damages pursuant to LSA-C.C. arts. 2315 and 2320 and for punitive damages pursuant to 42 U.S.C. § 1983.[2] *319 Named as defendants in the petition were: the City of Baton Rouge and the Parish of East Baton Rouge (City-Parish); Greg Phares, acting chief of police; Lynn Averette; and the State of Louisiana, through the Department of Public Safety and Corrections (State). In their petition, plaintiffs requested a trial by jury.
The State answered the plaintiffs' petition, generally denying the allegations and alleging that plaintiffs were injured as a result of their own actions and those of the organizers of the rally. The City-Parish also filed an answer, denying the allegations of the petition and alleging that plaintiffs were at fault.[3]
On December 2, 1994, the trial court held a conference. The case management schedule completed during the conference set discovery cut-off, pre-trial order, pre-trial conference, and trial dates, noting that the matter was assigned for a bench trial on September 11, 1995. Counsel for the City-Parish was not present at the conference, and the case management schedule reflects that he was to be notified of the schedule.
By Acts 1995, No. 598, the legislature amended LSA-R.S. 13:5105 to enact LSA-R.S. 13:5105 C relative to jury trial in suits against the City of Baton Rouge and the Parish of East Baton Rouge. Following its amendment in 1995, LSA-R.S. 13:5105 C provides as follows:
Notwithstanding the provisions of Subsection A, except upon demand for jury trial timely filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or the plaintiff in a lawsuit against the city of Baton Rouge or the parish of East Baton Rouge, no suit against the city of Baton Rouge or the parish of East Baton Rouge shall be tried by jury. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
On August 24, 1995, the City-Parish filed a request for a jury trial. In its motion, the City-Parish alleged that plaintiffs' causes of action exceeded $50,000.00 and that the request for a jury trial was filed within ten (10) days of the effective date of Act 598. On August 29, 1995, the plaintiffs filed a motion to strike the City-Parish's request for a jury trial, questioning the constitutionality of LSA-R.S. 13:5105 C. After a hearing on September 11, 1995, the trial court granted plaintiffs' motion to strike, refusing to address the constitutional challenge and noting that the request for a jury trial was not filed timely and that there had been no showing that the amount in controversy exceeded the jurisdictional amount.
From this adverse judgment, the City-Parish filed an application for supervisory writs. By order, dated December 15, 1995, this court granted the City-Parish's application for writs, issued a writ of certiorari, and stayed all proceedings until further order of the court. In its writ application, the City-Parish assigns the following specification of errors:
1. The trial court erred in ruling that applicant's request for jury trial was not timely filed.
2. The trial court erred in ruling that the jurisdictional amount is $50,000.00 rather than $20,000.00, and in failing to find that the allegations with regard to the existence of the jury amount were adequate.

RIGHT TO JURY TRIAL
The Bill of Rights, which includes the seventh amendment right to jury trial, is directly applicable only to the federal government. The rights become applicable to the states when the United States Supreme Court, through a process of "selective" incorporation, determines that each is required by the fourteenth amendment's guarantee of due process. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d 901, 903 (La.1985). Thus, whether the right to a civil jury trial must be afforded by a state to its citizens, at *320 least insofar as mandated by the United States Constitution, is dependent on whether the United States Supreme Court considers the civil jury trial an essential aspect of due process.
The United States Supreme Court, whose authority with respect to, and interpretation of, the United States Constitution is preeminent, has already decided that the right to jury trials in civil cases is not so fundamental to the American system of justice as to be required of state courts by the due process clause of the fourteenth amendment. Melancon v. McKeithen, 345 F.Supp. 1025, 1025 (E.D.La.1972), affirmed, 409 U.S. 943, 93 S.Ct. 289, 34 L.Ed.2d 214 (1972); Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d at 902. As a result, the seventh amendment is one of the few rights contained in the Bill of Rights which has not been made applicable to the states. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d at 903. See also Carter v. City of New Orleans, 327 So.2d 488, 490 (La.App. 4th Cir.1976); Heindel v. Harley-Davidson Motorcycles, 467 So.2d 641, 645 (La.App. 4th Cir.), reversed, order striking jury reinstated, 477 So.2d 695 (La. 1985).
The denial of trial by jury in civil cases began with the concept of sovereign immunity, which in Louisiana is of jurisprudential origin. As a general rule, the state was immune, unless it expressly waived its immunity. Consent to be sued was a matter of grace, not a vested right. Heindel v. Harley-Davidson Motorcycles, 467 So.2d at 642. However, since that time, sovereign immunity has been severely criticized, and courts in state after state have abrogated the doctrine. Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., 273 So.2d 19, 24-25 (La. 1973).
LSA-Const. art. 12, § 10 of the 1974 Constitution [4] clearly abrogated governmental immunity in Louisiana in contract and tort and provided, as follows:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
The adoption of LSA-Const. art. 12, § 10 represented an expansion of the right to sue the state and is in accord with prior judicial policy. Heindel v. Harley-Davidson Motorcycles, 467 So.2d at 644. See Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647, 651 (1983).
*321 In a Louisiana court, the right to a jury trial in a civil case is provided for by statute, namely LSA-C.C.P. arts. 1731 et seq. Usner v. Strobach, 591 So.2d 713, 721 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1289 (La. 1992); Scott v. Clark, 583 So.2d 938, 941 (La.App. 1st Cir.1991); Rico v. Vangundy, 461 So.2d 458, 461 (La.App. 5th Cir.1984). LSA-C.C.P. art. 1731 A provides that "[e]xcept as limited by Article 1732, the right of trial by jury is recognized." LSA-C.C.P. art. 1732 places limitations upon civil jury trials and provides as follows:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs.
(2) A suit on an unconditional obligation to pay a specific sum of money, unless the defense thereto is forgery, fraud, error, want, or failure of consideration.
(3) A summary, executory, probate, partition, mandamus, habeas corpus, quo warranto, injunction, concursus, worker's compensation, emancipation, tutorship, interdiction, curatorship, legitimacy, filiation, annulment of marriage, or divorce proceeding.
(4) A proceeding to determine custody, visitation, alimony, or child support.
(5) A proceeding to review an action by an administrative or municipal body.
(6) A suit on an admiralty or general maritime claim under federal law that is brought in state court under a federal "saving to suitors" clause, if the plaintiff has designated that suit as an admiralty or general maritime claim.
(7) All cases where a jury trial is specifically denied by law. (emphasis added.)
One instance which falls within the ambit of LSA-C.C.P. art. 1732(7), barring jury trial in "[a]ll cases where a jury trial is specifically denied by law," is LSA-R.S. 13:5105.
In 1975, the legislature enacted LSA-R.S. 13:5105, which provided for the denial of a jury trial in suits against the state. LSA-R.S. 13:5105 provided that "[n]o suit against the state or a state agency or political subdivision shall be tried by jury." See Abercrombie v. Gilfoil, 205 So.2d 461, 464 (La.App. 1st Cir.1967).
By Acts 1993, No. 993, LSA-R.S. 13:5105 was amended to provide as follows:
A. No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
B. Whenever a jury trial is demanded by the state, state agency, or the plaintiff in a lawsuit against the state or state agency, the party demanding the jury trial shall pay all costs of the jury trial including the posting of a bond or cash deposit for costs in accordance with Code of Civil Procedure Articles 1733 through 1734.1, inclusive.
By Acts 1995, No. 598, § 1, the legislature again amended LSA-R.S. 13:5105 and added subsection C. LSA-R.S. 13:5105 C provides as follows:
Notwithstanding the provisions of Subsection A, except upon demand for jury trial timely filed in accordance with law by the city of Baton Rouge or the parish of East Baton Rouge or the plaintiff in a lawsuit against the city of Baton Rouge or the parish of East Baton Rouge, no suit against the city of Baton Rouge or the parish of East Baton Rouge shall be tried by jury. The rights to and limitations upon a jury trial shall be as provided in Code of Civil Procedure Articles 1731 and 1732.
The issue presented in this writ application is whether the Parish of East Baton Rouge is entitled to a trial by jury pursuant to LSA-R.S. 13:5105, as amended by Acts 1995, No. 598, in an action which was commenced prior to the enactment of LSA-R.S. 13:5105 C. As a result, we must determine whether this legislative enactment applies retroactively.

RETROACTIVITY OF LSA-R.S. 13:5105 C
The general rule against retroactive application of legislative enactments and its exceptions is codified in LSA-C.C. art. 6; Rousselle v. Plaquemines Parish School *322 Board, 93-1916 (La. 2/28/94); 633 So.2d 1235, 1244; Cole v. Celotex Corporation, 599 So.2d 1058, 1063 (La.1992); Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d 832, 835 (La.App. 1st Cir. 1993). LSA-C.C. art. 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Additionally, LSA-R.S. 1:2, the governing rule of statutory construction, provides that no section of the Revised Statutes shall be applied retroactively, unless expressly so stated. Jackson v. Dendy, 93-0905 (La.App. 1st Cir. 6/24/94); 638 So.2d 1182, 1184; Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. The Louisiana Supreme Court has declined to adopt a literal interpretation of LSA-R.S. 1:2, stating its literal interpretation is inconsistent with civilian principles. See St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 816 n. 12 (La.1992).
Although LSA-R.S. 1:2 does not distinguish between substantive, procedural, and interpretive laws as does LSA-C.C. art. 6, it is generally construed as being co-extensive such that the prohibition against retroactivity applies only to substantive laws.[5]Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 816; Jackson v. Dendy, 638 So.2d at 1184. In other words, the rule of prospective application applies to laws that are substantive in nature, but laws that are procedural, remedial, or curative may be applied retroactively. Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835.
Reading LSA-R.S. 1:2 and LSA-C.C. art. 6 together to determine whether a legislative enactment is to be applied retroactively or prospectively, the court must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so and there are no other constitutional implications, our inquiry is at an end. However, if the legislature did not express an intention regarding retrospective or prospective application, we must classify the enactment as substantive, procedural, or interpretive. Cole v. Celotex Corporation, 599 So.2d at 1063; Jackson v. Dendy, 638 So.2d at 1184.
Consequently, in order to determine whether Acts 1995, No. 598 should be applied retroactively, we must perform the two-step approach prescribed in Cole v. Celotex Corporation, 599 So.2d at 1063.
First, it must be ascertained whether the enactment expressed legislative intent regarding retrospective or prospective application.
When the legislature amended LSA-R.S. 13:5105 by Acts 1993, No. 993, § 1, to authorize a jury trial against the state, a state agency, or a political subdivision of the state, the legislature specifically provided an effective date for the enactment and evinced its intention regarding the retrospective or prospective application of the amendment. Acts 1993, No. 993, § 2 provided as follows:
This Act shall become effective January 1, 1994, and shall not apply to any suit filed before that date. *323 However, in enacting LSA-R.S. 13:5105 C in 1995, the legislature did not provide for a specific effective date, nor did the legislature address its intent regarding the retrospective or prospective application of the amendment. Acts 1995, No. 598 contained only one section, namely § 1, which set forth the enactment of subsection C to LSA-R.S. 13:5105. Act 598 did not contain any other section, nor did it otherwise provide a specific effective date for the Act. As a result, pursuant to LSA-Const. art. 3, § 19,[6] the general effective date of all laws enacted at the 1995 Regular Session was August 15, 1995.
Because the legislature, in enacting LSA-R.S. 13:5105 C, did not express any intention as to whether the new provision was to be limited to prospective application only or whether the courts were to afford retrospective application to that provision, our inquiry does not end here. We must then determine whether LSA-R.S. 13:5105 is substantive, procedural, or interpretive. See Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; Cole v. Celotex Corporation, 599 So.2d at 1063; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 816; State, Department of Transportation and Development v. Hellenic, Inc., 93-0870, 93-0871 (La.App. 1st Cir. 4/8/94); 636 So.2d 1004, 1008, writ denied, 94-1637 (La. 10/7/94); 644 So.2d 635.
A substantive law has been defined as that which creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. Stated another way, substantive laws either establish new rules, rights, and duties or change existing ones. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 94-0128 (La.App. 1st Cir. 11/10/94); 645 So.2d 1240, 1242, writ denied, 94-3028 (La. 2/17/95); 650 So.2d 252.
Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or operation of laws. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d at 835. In other words, procedural acts describe methods for enforcing, administering, or determining rights, liabilities, or status. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Curative acts are those that remove past disabilities in order to effect the true intent of the legislature. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. It is the original statute, not the interpretive one, which established the rights and duties. St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited, I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may then be given retrospective effect because it does not change pre-existing law, it merely clarifies it. State, Department of Transportation *324 and Development v. Hellenic, Inc., 636 So.2d at 1009. Interpretive laws change existing standards by redefining and returning to their original meaning, providing the legislature with the opportunity to pronounce the correct interpretation to be given to existing laws. Legislation, however, which changes settled existing law falls outside the category of interpretive legislation. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009.
In the instant case, there is no contention that LSA-R.S. 13:5105 C is interpretive legislation, and, clearly, it is not. Therefore, we must determine whether LSA-R.S. 13:5105 C is substantive or procedural.
The validity of LSA-R.S. 13:5105 has been upheld previously as a proper exercise of legislative authority to provide a "procedure" for suits against the state and its political subdivisions under LSA-Const. art. 12, § 10. See Jones v. City of Kenner, 338 So.2d 606, 608 (La.1976); Carter v. City of New Orleans, 327 So.2d at 491.
In Carter v. City of New Orleans, 327 So.2d at 490-91, the court addressed whether trial by jury is a procedural matter within the meaning of the first sentence of LSA-Const. art. 12, § 10 C. The court held that trial by jury or by judge is a means or mode of proceeding by which a legal right is enforced; it is the machinery, as distinguished from its product, viz. the judgment. Louisiana jurisprudence is to the effect that the provisions of LSA-R.S. 13:5105, prohibiting jury trial in suits against the state or other public bodies, is a procedural matter. Moreover, in Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d 656, 658 (La.App. 1st Cir.), writ not considered, 248 La. 122, 176 So.2d 452 (1965), the court noted "[t]hat a right to trial by jury is procedural in this instance cannot be seriously disputed."
In support of their position that the 1995 amendment to LSA-R.S. 13:5105 is substantive and should be applied prospectively only, plaintiffs rely on Cambridge Corner Corporation v. Menard, 525 So.2d 527 (La.1988), and Ford v. McDermott Incorporated, 543 So.2d 1135 (La.App. 1st Cir.1989).
In Cambridge Corner Corporation v. Menard, 525 So.2d at 527, the Louisiana Supreme Court was presented with the issue of whether the 1987 amendment to LSA-C.C.P. art. 1732(1) was retroactive.[7] The court held that the amendment to LSA-C.C.P. art. 1732(1), raising the amount in dispute to $20,000.00, was substantive in nature and, therefore, applied only to suits filed on or after September 1, 1987, the effective date of the amendment. Because the suit in Cambridge Corner was filed prior to the effective date of the 1987 amendment to LSA-C.C.P. art. 1732(1), the $10,000.00 amount in dispute applied.
In Ford v. McDermott Incorporated, 543 So.2d at 1135, this court was presented with the issue of whether the 1988 amendment to LSA-C.C.P. art. 1732(6) was retroactive.[8] The court held that the amendment to LSA-C.C.P. art. 1732(6), prohibiting jury trials in admiralty cases, was substantive in nature and, therefore, applied only to suits filed after the effective date of the amendment. See also Gauchet v. Chevron U.S.A. Inc., 541 So.2d 272, 273 (La.App. 4th Cir.1989).
However, both of these cases are clearly distinguishable from the circumstances presented herein. First, in both of these cases, the courts addressed the retroactivity of an amendment to LSA-C.C.P. art. 1732, which has been held to involve a substantive right, and not LSA-R.S. 13:5105, which the courts have previously determined to be procedural. Second, in both of these cases, the amendments to LSA-C.C.P. art. 1732 operated to retroactively divest an individual, who had a right to a jury trial prior to the effective date of the amendments, of his right to a jury trial.
*325 From the jurisprudence concerning LSA-C.C.P. art. 1731 et seq. and LSA-R.S. 13:5105, we glean that the issue to be resolved herein is difficult and complex because the right to a jury trial has both procedural and substantive aspects. As noted earlier, laws which provide for the method by which one's substantive rights may be enforced, namely a trial by judge or trial by jury, are procedural in that they address the method of enforcing a substantive right. In this regard, LSA-R.S. 13:5105 is clearly a procedural law. On the other hand, although there is no unconditional, constitutional right to a jury trial in a civil case, when state law confers that right on one of its citizens, the legislature cannot thereafter revoke that right and affect pending matters. In such instances, the procedural law has substantive effect with constitutional implications. However, when the legislature enacts legislation which grants the right to a jury trial to an individual, who previously had no right to a jury trial, that legislation does not divest or otherwise affect any substantive right of the other party. There is, nor has there ever been, a vested right not to have a jury trial in a civil case, unless the jury trial is expressly not available under existing law.
Therefore, we hold that LSA-R.S. 13:5105 C establishes the procedure in a suit against the state, a state agency, or a political subdivision of the state, namely whether that action may be tried before a judge or a jury. Because the statute addresses the mode or means of the trial, it is a procedural matter, which does not affect any vested rights, and, therefore, may be applied retroactively. See Jones v. City of Kenner, 338 So.2d at 608; Carter v. City of New Orleans, 327 So.2d at 491; Pelloat v. Greater New Orleans Expressway Commission, 175 So.2d at 658. Accordingly, the City-Parish is entitled to a trial by jury in this matter, and the trial court erred in granting the plaintiffs' motion to strike.

TIMELINESS OF REQUEST FOR JURY TRIAL
In opposition to the City-Parish's writ application, the plaintiffs argue that, even if LSA-R.S. 13:5105 is applied retroactively, the City-Parish is not entitled to a trial by jury because it failed to timely file such request.
Having determined that the City-Parish is entitled to a jury trial pursuant to LSA-R.S. 13:5105 C, as amended by Acts 1995, No. 598, we must determine whether the City-Parish's request for a jury trial was filed timely.
The courts have recognized the absolute and inviolate right of a party to a juridical cause to a trial by jury, except as limited by law and provided the requisite procedural forms are fulfilled. Revel v. Telecheck Louisiana, 581 So.2d 405, 407 (La.App. 4th Cir.), writ denied, 588 So.2d 1116 (La. 1991). While the right to a jury trial is fundamental, it must be requested timely. Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1st Cir.), writs denied, 605 So.2d 1099, 1100 (La.1992); Boudreaux v. Total CATV, Inc., 536 So.2d 571, 572-73 (La. App. 1st Cir.1988). Thus, when a party makes a timely request and complies with the other procedural requisites, his right to a jury trial cannot be violated. Revel v. Telecheck Louisiana, 581 So.2d at 407.
LSA-C.C.P. art. 1733 C provides that "[t]he pleading demanding a trial by jury shall be filed not later than ten days after either the service of the last pleading directed to any issue triable by a jury, or the granting of a motion to withdraw a demand for a trial by jury." If a request for a jury trial is not made timely, the right is waived, and the trial judge is vested with much discretion to disallow the filing of amended pleadings, if he finds that they are being filed solely for the purpose of circumventing the time limitations of LSA-C.C.P. art. 1733. Sharkey v. Sterling Drug, Inc., 600 So.2d at 706; Scurria v. Madison Parish Police Jury, 566 So.2d 1077, 1080 (La.App. 2nd Cir.1990). See also LSA-C.C.P. art. 1151.
In the instant case, on July 11, 1992, plaintiffs filed the instant suit for compensatory damages pursuant to LSA-C.C. arts. 2315 and 2320 and for punitive damages pursuant to 42 U.S.C. § 1983 and requested a jury trial.
On December 2, 1994, a status conference was conducted by the trial judge. At *326 the conference, a case management schedule was completed, setting discovery cut-off, pre-trial order, pre-trial conference, and trial dates and assigning the matter for a bench trial on September 11, 1995. Counsel for the City-Parish was not present at the conference, and the case management schedule reflects that he was to be notified of the schedule. However, there is no evidence of record to show that the City-Parish was ever supplied with a copy of the case management schedule.
By Acts 1995, No. 598, the legislature amended LSA-R.S. 13:5105 to enact LSA-R.S. 13:5105 C and authorized jury trials in suits against the City of Baton Rouge and the Parish of East Baton Rouge. As noted earlier, the Act became effective on August 15, 1995. Nine days later, on August 24, 1995, the City-Parish filed a request for a jury trial, alleging that plaintiffs' causes of action exceeded $50,000.00 and that the request for a jury trial was filed within ten (10) days of the effective date of Act 598. On August 29, 1995, the plaintiffs filed a motion to strike the City-Parish's request for a jury trial.
After a hearing on September 11, 1995, the trial court granted plaintiffs' motion to strike, finding that the request for a jury trial was not filed timely.
We disagree. As set forth earlier, LSA-C.C.P. art. 1733 C, which sets forth the time delays within which a request for a jury trial must be filed, provides that "[t]he pleading demanding a trial by jury shall be filed not later than ten days after either the service of the last pleading directed to any issue triable by a jury, or the granting of a motion to withdraw a demand for a trial by jury."
We acknowledge that the City-Parish's request for a jury trial was not filed within ten (10) days of the filing of the last pleading directed to any issue triable by a jury or the granting of a motion to withdraw a demand for a jury trial as contemplated by LSA-C.C.P. art. 1733. The record reveals that these delays had elapsed prior to the enactment of LSA-R.S. 13:5105 C. At the time such pleading was required to be filed pursuant to LSA-C.C.P. art. 1733, the City-Parish could not have legally requested a trial by jury because LSA-R.S. 13:5105 C had not yet been enacted. However, the City-Parish's request was filed within ten (10) days of the effective date of the 1995 amendment adding LSA-R.S. 13:5105 C. As such, we find the request timely within the contemplation of LSA-C.C.P. art. 1733. This determination is consistent with the jurisprudential principle that the right of a litigant to jury trial is fundamental in character, and the courts will indulge every presumption against a waiver, loss, or forfeiture thereof. Champagne v. American Southern Insurance Company, 295 So.2d 437, 439 (La.1974); Duplantis v. United States Fidelity & Guaranty Insurance Corporation, 342 So.2d 1142, 1143 (La.App. 1st Cir.1977).

AMOUNT IN CONTROVERSY
In granting plaintiffs' motion to strike the City-Parish's request for a jury trial, the trial court determined that, among other things, there had been no showing that the amount in controversy exceeded the jurisdictional amount.
The amount in dispute with respect to the principal demand determines whether the principal demand will by tried by a jury. LSA-C.C.P. art. 1731 B; Cambridge Corner Corporation v. Menard, 525 So.2d at 529; Mitchell v. Fradella, 628 So.2d 1198, 1201 (La.App. 3rd Cir.1993), writ not considered, 94-0079 (La. 3/11/94); 634 So.2d 405.
Prior to amendment by Acts 1993, No. 661, LSA-C.C.P. art. 1732 provided, in pertinent part, as follows:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds twenty thousand dollars exclusive of interest and costs.
Subsequent to its amendment by Acts 1993, No. 661, LSA-C.C.P. art. 1732 provided, in pertinent part, as follows:
A trial by jury shall not be available in:
(1) A suit where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars exclusive of interest and costs.
*327 Since no effective date was specified in the bill, the amendment became effective on August 15, 1993.[9] Therefore, unless the amendment to LSA-C.C.P. art. 1732(1) is retroactively applied, the $50,000 amount would only apply in cases filed on or after August 15, 1993.
In Cambridge Corner Corporation v. Menard, 525 So.2d at 530, the Louisiana Supreme Court addressed the retroactivity of a prior amendment to LSA-C.C.P. art. 1732(1), which increased the amount in controversy requirement from $10,000 to $20,000. The court in Cambridge Corner Corporation v. Menard, 525 So.2d at 530-31, held:
Article 1732 is not an interpretive law and we cannot say that it is merely procedural either. Article 1731 and the exceptions in art. 1732 are more than just procedural rules. Article 1731 statutorily grants a right to a trial by jury in all civil cases except as limited by art. 1732. The jurisprudence has also established that "the right of a litigant to a jury trial is fundamental in character and the courts will indulge in every presumption against a waiver, loss or forfeiture thereof." The amendment to art. 1732(1) raising the amount in dispute to $20,000 is substantive in nature and therefore shall apply only to suits that were filed on or after September 1, 1987. Since this case was filed on July 9, 1986, the $10,000 amount in dispute applies here. (citations omitted.)
Therefore, we hold that the 1993 amendment to LSA-C.C.P. art. 1732(1), increasing the amount in controversy requirement from $20,000 to $50,000, is likewise substantive and applies only to those suits that were filed on or after August 15, 1993. Because plaintiffs' suit was filed on August 10, 1992, the $20,000 amount in dispute applies in the instant case.
Having determined that the $20,000 amount in controversy requirement applies in the instant case, we must determine whether the amount demanded in good faith by the plaintiff met this requirement.
Until 1989, a plaintiff was always required to specify the damages claimed and to set forth what constituted those damages and the manner in which the amount was determined. May v. Winn Dixie Louisiana, Inc., 613 So.2d 1026, 1027 (La.App. 3rd Cir.), writ denied, 616 So.2d 704 (La.1993). In 1988, LSA-C.C.P. art. 893 was enacted, effective January 1, 1989, changing the law. LSA-C.C.P. art. 893(1) read as follows:
No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises. If a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial, the lack of jurisdiction of federal courts due to insufficiency of damages, or for other purposes, a general allegation that the claim exceeds or is less than the requisite amount is sufficient. By interrogatory, an opposing party may seek specification of the amount sought as damages, and the response may thereafter be supplemented as appropriate.
This law was not in effect when Cambridge Corner Corporation v. Menard, 525 So.2d 527, was decided.
Because a plaintiff is now prohibited from stating the amount demanded, LSA-C.C.P. art. 1731 is no longer the statutory method for determining whether any issue in the principal demand is triable by a jury. May v. Winn Dixie Louisiana, Inc., 613 So.2d at 1027-28. However, the right to a jury trial does not come into existence, unless a plaintiff's cause of action exceeds the requisite amount as set forth in LSA-C.C.P. art. 1732(1), and some means had to be provided for determining whether the threshold was met.
In May v. Winn Dixie Louisiana, Inc., 613 So.2d at 1028, the court held that LSA-C.C.P. art. 893 resolves the issue by providing that a general allegation that the claim exceeds or is less than the requisite amount is sufficient for jury purposes, stating:
As we read new Article 893A(1), either side can make this general allegation, and thereby establish the right or the absence *328 of the right to a trial by jury. The article does not say this has to be done, nor does it say when it should be done.
The new article gives the defendant in a damage suit the additional right to establish by interrogatory, a specification of the amount of damages sought. If this is done and the specification is in excess of $20,000, and the defendant wants a jury trial, the defendant has thereby established its right to ask for a jury trial. The defendant is in this way protected against a plaintiff's failure to make an allegation that would establish whether or not the right to a jury trial existed.
In May v. Winn Dixie Louisiana, Inc., 613 So.2d at 1028, the plaintiff filed a suit which failed to set forth the amount of damages claimed, being prohibited from doing so by LSA-C.C.P. art. 893. Defendants answered and requested a jury trial, never alleging that the claim exceeded or was less than the jury trial threshold limit of $20,000. Shortly before trial, the plaintiff filed a motion to strike the request for a jury trial. Accompanying her motion was plaintiff's affidavit in which she stated that her damages did not exceed $20,000. The trial court granted the motion to strike. On the day of trial, the defendant filed a motion to vacate the order striking its request for a jury trial and set forth plaintiff's settlement offer, which exceeded $20,000. The trial court denied the motion. On appeal, the appellate court affirmed the trial court determination on the grounds that the defendant never propounded interrogatories to plaintiff seeking specification of the amount of damages sought. Nor had defendant made a general allegation that the claim exceeded the requisite amount to establish its entitlement to a jury trial; the defendant simply alleged it was entitled to a jury trial.
As noted earlier, Louisiana recognizes the right to a trial by jury, except in certain limited exceptions set forth by statute. LSA-C.C.P. arts. 1731 and 1732. A party claiming that its case fits within an exception to the right to a jury trial has the burden of proving that the case falls within that exception. Parker v. Rowan Companies, Inc., 628 So.2d 1108, 1110 (La.1991); Cambridge Corner Corporation v. Menard, 525 So.2d at 530.
In the instant case, in its request for a jury trial, the City-Parish made a general allegation that plaintiffs' causes of action exceeded $50,000.[10] At the motion to strike hearing, attorney for plaintiffs acknowledged that the claims, including § 1983 damages, would exceed $20,000 per person, but that their damages would not likely exceed the $50,000 threshold limit. Counsel for plaintiffs made the following argument with regard to threshold amount:
We have 111 chargesthat's 112 that we have. One lawsuit was missing, but 111 claims was [sic] described in the lawsuit currently. Ninety-nine per cent of them complained of excessive restraint or unlawful detention onlywell, not only. There's some overlap, but 99 per cent of them that was the wrong wordcomplained of that tort. Only 30 complained of a transitory injury without medical attention. They were roughed up. They were hit. They were thrown down on the cement. They gottheir clothes were torn, and then they went home. Seven complained of serious injuries requiring medical attention. Five were hospitalized. Okay? So when you come back to this, in the lawsuit against the City-Parish but not the state, we claim punitive damages for violation of federal constitutional rights under 42 USC 1983, a deprivation of our civil rights under color of law, against the City Parish. We believe that a punitive damage award under the federal guidelines may very well exceed the $20,000.00 threshold per claimant or per some of the claimants, however the court wants to rule that. It is probably going to be per capita. I do not believe that it will exceed the $50,000.00 level; however, with regard to the compensatory, as opposed to the exemplary damages, I can't stipulate as to even the $50,000.00 threshold. In all probabilityI agree with Mr. Marinoff. Many will fall below and *329 some may very well fall above. (emphasis added.)
After reviewing the entire record in this matter, we find that plaintiffs did not meet their burden of proving that their case falls within an exception to the right to a trial by jury, namely that the amount in controversy did not exceed $20,000 as required by LSA-C.C.P. art. 1732(1).

CONSTITUTIONAL ISSUE
In opposition to the City-Parish's writ application, plaintiffs argue that Acts 1995, No. 598 is unconstitutional on its face because it is a special or local law which partially repeals a general law in contravention of LSA-Const. art. 3, § 12 B. Although plaintiffs raised this issue before the trial court, in determining that the City-Parish had not filed its request for a jury trial timely and that the amount in controversy did not exceed the amount required by LSA-C.C.P. art. 1732(1), the trial court did not reach the issue of whether LSA-R.S. 13:5105 C was unconstitutional.
A review of the transcript of the hearing on the motion to strike reveals that counsel presented argument on three different issues; none receiving a disproportionate amount of attention by the parties or by the court. A determination relative to the constitutionality of LSA-R.S. 13:5105 C will have pervasive and far-reaching consequences with regard to both pending and future litigation against the City of Baton Rouge and the Parish of East Baton Rouge. As a result, a full development of the arguments and evidence is required. Under these circumstances, we deem it best to remand the case to the trial court so that all issues relative to the question of the constitutionality of LSA-R.S. 13:5105 C may be resolved.

CONCLUSION
For the above reasons, the writ of certiorari, prohibition, and mandamus previously issued by this court is made peremptory. The trial court judgment, striking the City-Parish's request for a jury trial, is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein.
WRIT MADE PEREMPTORY. JUDGMENT STRIKING REQUEST FOR JURY TRIAL REVERSED, AND CASE REMANDED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] On July 12, 1993, several of the plaintiffs sought to voluntarily dismiss their claims against the defendants, and an intervenor sought to intervene in the proceedings. By order, dated July 27, 1993, the trial judge granted the intervenor leave of court to intervene in the proceedings, and the claims of some of the plaintiffs were dismissed without prejudice.
[3] Various other pleadings were filed by the parties, none of which are pertinent to the issues presented in this writ application.
[4] By Acts 1995, No. 1328, § 1, approved October 21, 1995, and effective November 23, 1995, LSA-Const. art. 12, § 10 rewrote subsection C to provide as follows:

Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
The 1995 amendment to the constitution allows the legislature to limit and/or restrict the right to sue the state, a state agency, or a political subdivision of the state.
[5] We note that, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual or disturb vested rights. Rousselle v. Plaquemines Parish School Board, 93-1916 (La. 2/28/94); 633 So.2d 1235, 1244; Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94); 630 So.2d 714, 721, cert. denied, ___ U.S. ___, 114 S.Ct. 2165, 128 L.Ed.2d 887. A right is vested when:

the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right.
Rico v. Vangundy, 461 So.2d at 462, citing Tennant v. Russell, 214 La. 1046, 39 So.2d 726, 728 (1949), and Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.), writ denied, 415 So.2d 944 (La.1982).
[6] LSA-Const. art. 3, § 19 provides as follows:

All laws enacted during a regular session of the legislature shall take effect on August fifteenth of the calendar year in which the regular session is held and all laws enacted during an extraordinary session of the legislature shall take effect on the sixtieth day after final adjournment of the extraordinary session in which they were enacted. All laws shall be published prior thereto in the official journal of the state as provided by law. However, any bill may specify an earlier or later effective date.
The Regular Session of 1995 (the Twenty-First Regular Session under the Constitution of 1974) convened on March 27, 1995, and adjourned sine die June 19, 1995.
[7] The 1987 amendment to LSA-C.C.P. art. 1732(1) increased the amount in dispute required to entitle one to a jury trial from $10,000.00 to $20,000.00.
[8] The 1988 amendment to LSA-C.C.P. art. 1732(6) prohibited jury trials in suits on an admiralty or general maritime claim under federal law in any suit brought in state court under a federal "savings to suitors" clause, if the plaintiff designated the suit as an admiralty or general maritime claim.
[9] See footnote 6.
[10] As noted previously, the threshold amount applicable at the time plaintiffs' filed their action was only $20,000.